HONORABLE RICHARD A. JONES

1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

9

10

11

12

13

JP MORGAN CHASE BANK, N.A., et al.,

       Plaintiffs,

    v.

BREE JONES, et al.,

       Defendants.

CASE NO. C15-1176RAJ

ORDER

14

## I.  INTRODUCTION

15        This matter comes before the Court on Plaintiffs JPMorgan Chase Bank, N.A. and

16   JPMorgan Chase & Co.'s (collectively, "Chase") Motion to Compel Arbitration.  Dkt. #

17   9.  Chase seeks to compel Defendants Tiffany Reid, Jorge Navarrete, Maryana Grattan,

18   and Bree Jones (collectively, "Defendants") into individually arbitrating their overtime

19   claims against Defendants.  Defendants have also filed a Motion to Dismiss on various

20   grounds, including that the Court lacks personal jurisdiction over Ms. Reid, Mr.

21   Navarrete, and Ms. Grattan (collectively, the "out of state Defendants").  *See* Dkt. # 17.

22   Although Chase has requested oral argument, the Court finds that oral argument is

23   unnecessary.  For the reasons set forth below, the Court **GRANTS in part and DENIES**

24   **in part** Chase's Motion to Compel Arbitration (Dkt. # 9) and **GRANTS in part and**

25   **DENIES in part** Defendants' Motion to Dismiss.

26

27

28   ORDER – 1

## II.  BACKGROUND

Chase seeks to compel the Defendants into individual arbitrations pursuant to Binding Arbitration Agreements ("BAAs") the Defendants signed with Washington Mutual Bank ("WaMu").  *See* Compl. ¶¶ 22-28.  In September 2008, Chase acquired certain assets and liabilities of WaMu from the Federal Deposit Insurance Corporation ("FDIC").  *Id.* ¶ 5.

Each of the Defendants worked for Chase as an Assistant Branch Manager ("ABM") after Chase acquired WaMu's assets and liabilities.  *See id.* ¶¶ 6-9.  The Defendants did so in different states – Ms. Jones in Washington, Ms. Reid in Florida, and Mr. Navarrete and Ms. Grattan in York.  *Id.*  Ms. Jones signed a BAA with WaMu on February 11, 1999.[1]  *See id.* ¶ 10 & Ex. 1.  Ms. Reid signed two BAAs with WaMu – one on June 11, 2003 and another on August 10, 2007.  *See id.* ¶ 11 & Ex. 2.  Mr. Navarrete signed a BAA with WaMu on March 12, 2007.  *See id.* ¶ 12 & Ex. 3.  And Ms. Grattan did the same on June 26, 2007.  *See id.* ¶ 13 & Ex. 4.

The instant dispute began when Ms. Reid submitted a letter to Chase's counsel on May 7, 2015 invoking arbitration pursuant to her BAA with WaMu.  *See id.* ¶ 14; Dkt. # 10-1 (Linthorst Decl.) Ex. 1 at 2.  Ms. Reid brought claims that Chase violated the Fair Labor Standards Act ("FLSA") by not paying her overtime during her time as an ABM. *See id.*  On May 19, 2015, Ms. Reid indicated that she intended to prosecute her claims on a representative basis on behalf of herself and others similarly situated.  *See id.* Ex. 2 at 9.  The email attached "Consent to Join Form[s]" from the other Defendants.  *Id.* at 10-12.  On June 4, 2015, Ms. Reid mailed another letter addressed to WaMu's general counsel, this time listing all of the Defendants as claimants and indicating a desire to collectively arbitrate their claims as well as those of others.  *See id.* Ex. 3 at 14-15.  Chase responded on June 11, 2015, indicating that the Defendants were in breach of the

---

[1] Ms. Jones had a break in service.  She was employed by WaMu from February 1999 until 2006 and was later employed by Chase from July 2009 to November 2013.  *See* Dkt. # 22 (Jones Decl.) ¶

ORDER – 2

arbitration agreements by attempting to proceed collectively. *See id.* Ex. 4 at 17. Chase therefore requested that the Defendants agree to individual arbitration in the states where they worked for Chase. *See id.* at 18.

After this case was filed, however, Defendants indicated that they wished to join another action, *Taylor, et al. v. JPMorgan Chase & Co., et al.*, Case No. 15-cv-3023 (S.D.N.Y.). *See* Dkt. # 12-1 (Linthorst Decl.) Ex. 5 at 2. Nevertheless, Chase has pressed on to enforce the BAAs against the Defendants. At the same time, Defendants now request that the Court dismiss the instant action, largely because they have opted into the *Taylor* class action.

## III.   LEGAL STANDARD

a.   <u>Motion to Compel Arbitration</u>

The Federal Arbitration Act ("FAA") provides that a "written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. As explained by the Supreme Court in *Dean Witter Reynolds Inc. v. Byrd*, "the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." 470 U.S. 213, 218 (1984) (citing 9 U.S.C. §§ 3-4).

"Under the FAA, the basic role for courts is to determine '(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue.'" *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 564-65 (9th Cir. 2014) (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)). If the response is affirmative on both counts, then the FAA requires the court to enforce the arbitration agreement in accordance with its terms. *Chiron*, 207 F.3d at 1130. "When determining whether parties have agreed to submit to arbitration, [courts] apply

ORDER – 3

general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration." *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 742 (9th Cir. 2014) (quoting *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1044 (9th Cir. 2009)) (internal quotation marks omitted).

The party resisting arbitration bears the burden of showing that the arbitration agreement is invalid or does not encompass the claims at issue. *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91-92 (2000) (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991); *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 227 (1987)). Where the arbitration provision is broad, there is a heightened presumption in favor of arbitration such that the party resisting arbitration must show "forceful evidence of a purpose to exclude the claim from arbitration . . . ." *AT&T Techs., Inc. v. Commc'ns Workers of Am.,* 475 U.S. 643, 650 (1986) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 585 (1960)).

b. <u>Motion to Dismiss</u>

Fed. R. Civ. P. 12(b)(6) permits a court to dismiss a complaint for failure to state a claim. The rule requires the court to assume the truth of the complaint's factual allegations and credit all reasonable inferences arising from those allegations. *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007). A court "need not accept as true conclusory allegations that are contradicted by documents referred to in the complaint." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The plaintiff must point to factual allegations that "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 568 (2007). If the plaintiff succeeds, the complaint avoids dismissal if there is "any set of facts consistent with the allegations in the complaint" that would entitle the plaintiff to relief. *Id.* at 563; *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

ORDER – 4

The court typically cannot consider evidence beyond the four corners of the complaint, although it may rely on a document to which the complaint refers if the document is central to the party's claims and its authenticity is not in question. *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). The court may also consider evidence subject to judicial notice. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

When a defendant invokes Federal Rule of Civil Procedure 12(b)(2) in a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing of personal jurisdiction. *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1128-29 (9th Cir. 2003). A plaintiff builds a prima facie case by providing evidence that, if believed, would support the court's exercise of jurisdiction. *Id.* at 1129. The court need not accept a plaintiff's bare allegations if the defendant controverts them with evidence. *See AT&T Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996). If both parties provide evidence supporting different versions of a fact, however, the court must resolve competing inferences in a plaintiff's favor. *Harris Rutsky*, 328 F.3d at 1129. If appropriate, the court must grant a party's request for an evidentiary hearing to determine personal jurisdiction. *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1284-85 (9th Cir. 1977).

## IV.   ANALYSIS

### a.   The Validity of the BAAs

The Court begins with the threshold question of whether a valid agreement to arbitrate exists between the Parties. Each of the Defendants signed a BAA with WaMu. *See* Compl. Exs. 1-4. The substantive terms of the BAAs do not differ. *Id.* The BAA provide that "[a]ny and all disputes which involve or relate in any way to my employment (or termination of employment) with Washington Mutual shall be submitted to and resolved by final and binding arbitration." *See* Compl. Exs. 1-4 ¶ 1. The Parties understood that they waived any right they may have had to file a civil action relating to the Defendants' employment with WaMu. *See id.* ¶ 2. The BAAs were "intended to

ORDER – 5

cover all civil claims which involve or relate in any way to [the Defendants']
employment (or termination of employment) with Washington Mutual." *Id.* ¶ 3.  And the
BAAs were to "remain in full force and effect at all times during and subsequent to [the
Defendants'] employment with Washington Mutual, or any successor in interest to
Washington Mutual." *Id.* Ex. 1 ¶ 18, Exs. 2-4 ¶ 21.

In novel[2] fashion, Defendants contend that the BAAs terminated when the FDIC
was appointed as the receiver for WaMu[3] and when Chase entered into a Purchase and
Assumption Agreement (the "P&A Agreement") for the assets and liabilities of WaMu.[4]
*See* Dkt. # 16 at 10.  They argue that when the OTS order issued, 12 C.F.R. §
563.39(b)(4) ("§ 563.39") operated to terminate their obligations under the BAAs.  *See
id.* at 10.  They further argue that even if the BAAs survived operation of § 563.39(b)(4)
following WaMu's closing, Chase has no right to enforce the BAAs because they did not
acquire any rights to them under the terms of the P&A Agreement.  *See id.* at 11.

The Court begins with the question of whether the BAAs survived the OTS'
closing of WaMu and appointment of the FDIC as receiver.  Section 563.39 governs
"employment contracts" between a "savings association" and its employees.  It requires

---

[2] Defendants' argument appears to be one of first impression.  However, to this Court's
knowledge, every other case to address the BAAs subsequent to the OTS order has enforced the
BAAs.  *See e.g., Hwang v. J.P. Morgan Chase Bank, N.A.,* No. CV 11-10782 PSG JEMX, 2012
WL 3862338, at *2 (C.D. Cal. Aug. 16, 2012); *Abeyrama v. J.P. Morgan Chase Bank,* No.
CV12-00445 DMG MRWX, 2012 WL 2393063, at *2 (C.D. Cal. June 22, 2012); *Anderson v.
Wash. Mut. Bank,* No. 10-6113TC, 2010 WL 4827500, at *1 (D. Or. Oct. 25, 2010).

[3] The Office of Thrift Supervision ("OTS") closed WaMu and appointed the FDIC as receiver
for WaMu on September 25, 2008.  *See* Dkt. # 18 (Quiles Decl.) Ex. 3 at 16.  Defendants request
that the Court take judicial notice of this document.  *See* Dkt. # 16 at 7 n.3.  The Court will do so
as it appears to be a matter of public record and not reasonably subject to dispute.  *See* Fed. R.
Evid. 201(b).  It does not appear that Chase disputes the request.  And numerous courts have
taken judicial notice of the same order.  *See e.g., Beaton v. JPMorgan Chase Bank N.A.,* No.
C11-0872 RAJ, 2012 WL 909768, at *1 n.3 (W.D. Wash. Mar. 15, 2012).

[4] Defendants also request that the Court judicial notice of the P&A Agreement.  *See* Dkt. # 18 at
7 n.3.  The agreement appears to be a matter of public record and is not reasonably subject to
dispute and is therefore fit for judicial notice.  *See* Fed. R. Evid. 201(b).  As with the OTS order,
Chase does not contest the request and several courts have taken judicial notice of the same.  *See
e.g., Jarvis v. JP Morgan Chase Bank, N.A.*, No. CV 10-4184-GHK (FMOX, 2010 WL 2927276,
at *1 (C.D. Cal. July 23, 2010).

ORDER – 6

that "[a]ll employment contracts shall be in writing and shall be approved specifically by an association's board of directors" and that savings associations may "not enter into an employment contract with any of its officers or other employees if such contract would constitute an unsafe or unsound practice," which would occur "if such contract could lead to material financial loss or damage to the association or could interfere materially" with the board of directors' duty or discretion to terminate the employment of officers or other employees. *See id.* § 563.39(a).

Section 563.39 also mandates that every employment contract must provide that "[i]f the savings association is in default (as defined in section 3(x)(1) of the Federal Deposit Insurance Act), all obligations under the contract shall terminate as of the date of default, but this paragraph (b)(4) shall not affect any vested rights of the contracting parties." *Id.* § 563.39(b)(4). The term "employment contract" is not defined in the regulations. However, the Ninth Circuit has construed the term to mean "an agreement setting forth 'terms and conditions' of employment" – in other words, the *general* terms and conditions. *Modzelewski v. Resolution Tr. Corp.*, 14 F.3d 1374, 1376 (9th Cir. 1994); *Mut. of Omaha Bank v. Huntington*, 597 F. Supp. 2d 1213, 1217 (D. Nev. 2009) (agreements were employment contracts where they included "position title, reporting structure, salary, a covenant not to compete, and severance pay"); *Rice v. Resolution Tr. Corp.*, 785 F. Supp. 1385, 1389 (D. Ariz. 1992) (holding agreement was an employment contract because it "set forth the general terms and conditions of employment"). Some other courts have focused on the compensatory aspect of such contracts, given the policy reasons behind the regulations. *Maher v. Harris Tr. & Sav. Bank*, 75 F.3d 1182, 1188-89 (7th Cir. 1996) (holding that employment contracts "must be interpreted broadly enough to subject to regulation all compensation paid for services rendered by employees"); *see Williams v. F.D.I.C.*, Master File No. 09-504RAJ, (W.D. Wash. Aug. 8, 2011) Dkt. # 144 at 5-6 (finding change-in-control, severance plan, and retention agreements – which provided for payment contingent on certain triggering events – to be employment

ORDER – 7

contracts); *see also Aronson v. Resolution Tr. Corp.*, 38 F.3d 1110, 1112-13 (9th Cir. 1994) (holding that oral agreement providing for salary and retirement benefits was an unenforceable oral agreement under § 563.39); *but see Cohen v. Resolution Tr. Corp.*, No. CIV. 90-1065-R(P), 1993 WL 282051, at *5 (S.D. Cal. May 10, 1993) (holding that bonus plan was not an employment contract for purposes of § 563.39).

The BAAs neither set forth the general terms and conditions of employment nor provide for any compensation. *See* Compl. Exs. 1-4. The BAAs certainly do not set forth the general terms of employment – even Defendants concede (*see* Dkt. # 34 at 10) that the BAAs' only subject matter is to arbitrate employment related claims (*see* Compl. Ex. 1-4 ¶ 1). To be sure, they identify the employee's "employment with Washington Mutual, Inc." as the sole consideration for entering into the agreement. Compl. Exs. 1-4. But it is impossible to believe that the BAAs govern the *entire* employment relationship (or even set forth any of the essential terms of the employment) – WaMu did not employ the Defendants solely so it could arbitrate their employment related claims and the Defendants did not agree to work for WaMu solely to do the same. *Kloss v. Honewell, Inc.*, 890 P.2d 480 (Wash. Ct. App. 1995) hurts, rather than helps, Defendants' position. Although the court there found that a valid employment contract could exist for statute of frauds purposes even without specifying the amount of compensation, the contract there also went much farther than the BAAs by establishing the "subject matter of the contract, the parties, [] the promise of employment" and, implicitly, "the obligation to pay [the plaintiff] for his work." *Id.* at 484. Those terms are not present here, especially as to the particulars of the Defendants' employment (i.e., that WaMu was hiring Defendants as ABMs) or their compensation (i.e., that WaMu was paying Defendants). Given that the BAAs do not set forth the general terms and conditions of employment or mention compensation, they are not "employment contracts" under § 563.39.

Still, Defendants argue that the BAAs are a mere extension of the Defendants' overall employment contracts, forming a necessary and essential part of the employment

ORDER – 8

agreement.  *See* Dkt. # 16 at 12.  But the BAAs do not reference any additional

employment agreements between WaMu and Defendants.  Rather, the BAAs uniformly

avoid discussing any other agreements between the Parties.  *See* Compl. Ex. 1 ¶ 3 ("*This*

*Agreement* is intended to cover . . . ."), 16 ("*This Agreement* may be enforced . . . . "); 18

("*This Agreement* shall remain in full force and effect . . . . ") (emphasis added).  In short,

the plain terms of the BAAs show that they are independent of any other agreement.  This

makes sense, as an arbitration agreement may be enforceable and cover employment-

related claims even if it is not a part of (or associated with) the employment contract.[5]

*See E.E.O.C. v. Luce, Forward, Hamilton & Scripps*, 345 F.3d 742, 749 (9th Cir. 2003)

(citing *Willis v. Dean Witter Reynolds, Inc.*, 948 F.2d 305, 307 (6th Cir. 1991))

(recognizing that "an arbitration agreement in securities registration is enforceable with

respect to Title VII claims" even if "it is not an employment contract"); *see also Ramirez-*

*Baker v. Beazer Homes, Inc.*, 636 F. Supp. 2d 1008, 1015 (E.D. Cal. 2008).

This all strongly suggests that the BAAs are simply standalone agreements and not

employment contracts for purposes of interpreting § 563.39.  As such, OTS' closure of

WaMu likely did not terminate these agreements under § 563.39 as a matter of law

because it simply did not apply.  Nevertheless, applying § 563.39 to the BAAs is akin to

putting a square peg into a round hole.  As such, the Court turns to the next question:

assuming that the BAAs are employment contracts under § 563.39, is the right to compel

arbitration under the BAAs a "vested" right?[6]

---

[5] At least one court in the Ninth Circuit has addressed the somewhat analogous situation where a party claims that an employee handbook is a written employment contract for purposes of § 563.39.  *See Bianco v. H.F. Ahmanson & Co.*, 897 F. Supp. 433, 438 (C.D. Cal. 1995).  The *Bianco* court found the handbook was not sufficient evidence of an employment contract for purposes of the regulation.  *Id.* at 438-39.

[6] Defendants argue on Reply that the BAAs are unenforceable because they do not comply some other requirements of § 563.39.  *See* Dkt. # 34 at 11-12.  "[N]ew arguments  and evidence presented for the first time in Reply are waived."  *Docusign, Inc. v. Sertifi, Inc.*, 468 F. Supp. 2d 1305, 1307 (W.D. Wash. 2006) (citing *United States v. Patterson*, 230 F.3d 1168, 1172 (9th Cir. 2000)).  These arguments are novel and would require presentation of additional evidence.  As such, they are waived.  Furthermore, even assuming that these other requirements of § 563.39 applied, the BAAs could still be saved if they were read in conjunction with some other writing (perhaps the actual employment agreements).

ORDER – 9

"There is no definition of what is a 'vested' right under either Section 563.39 or its authorizing legislation. Every court which has considered the issue, however, has held that a right is vested if it is unconditional, *i.e.*, the employee holding the right is entitled to claim immediate payment." *See Romines v. Great-W. Life Assurance Co.*, 73 F.3d 1457, 1464 (8th Cir. 1996) (citing *Aronson*, 38 F.3d at 1113; *Modzelewski*, 14 F.3d at 1378). In other words, "rights are deemed vested if they are unconditional prior to the termination of the employment contract." *Crocker v. Resolution Tr. Corp.*, 839 F. Supp. 1291, 1295 (N.D. Ill. 1993) (citing *Marsa v. Metrobank for Sav., F.S.B.*, 825 F. Supp. 658, 663 (D.N.J. 1993); *Rice*, 785 F. Supp. at 1388). Simply put, "vested" under 12 C.F.R. § 563.39(b) means "without condition precedent." *Navarro v. F.D.I.C.*, 371 F.3d 979, 981 (7th Cir. 2004).

Defendants argue that the right to arbitration under the BAAs did not vest until Chase received the Defendants' demand for arbitration. *See* Dkt. # 34 at 12. Defendants' construction requires finding that the right to arbitration is subject to a condition precedent[7] – i.e. the presentation of a demand for arbitration or the accrual of the underlying FLSA claim.

The issue of whether "conditions precedent to an obligation to arbitrate have been met" is generally left "for the arbitrators to decide." *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1126-27 (9th Cir. 2008) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 85 (2002)) (emphases removed); *see also Townsend v. Quadrant Corp.*, 268 P.3d 917, 920 (Wash. 2012). In other words, an arbitration agreement may be enforced by a court even without regards to whether it has a condition precedent – those issues

---

[7] "A condition precedent is a condition or event set out in a contract 'occurring subsequent to the making of a valid contract which must exist or occur before there is a right to immediate performance.'" *BOFI Fed. Bank v. Advance Funding LLC*, 105 F. Supp. 3d 1215, 1219 (W.D. Wash. 2015) (quoting *Walter Implement, Inc. v. Focht*, 730 P.2d 1340, 1342 (Wash. 1987)). Conditions precedent are disfavored under both Washington and Ninth Circuit law. *See Southland Corp. v. Emerald Oil Co.*, 789 F.2d 1441, 1444 (9th Cir. 1986); *In re Penberthy*, 211 B.R. 391, 398 (Bankr. W.D. Wash. 1997) (citing *Fischler v. Nicklin*, 319 P.2d 1098, 1101 (Wash. 1958)).

ORDER – 10

"are presumptively *not* for the judge, but for the arbitrator, to decide." *Howsam*, 537 U.S. at 84 (citing *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 557 (1964)). Still, this dispute presents a somewhat unusual posture by intertwining issues of the BAAs' validity with these procedural issues.

Whatever the case, the Court finds that notice provision here is not a condition precedent to the *right* to arbitrate employment claims. The BAAs unequivocally state that "*[a]ny and all disputes* which involve or relate in any way to my employment (or termination of employment) with Washington Mutual *shall be submitted to and resolved by final and binding arbitration.*" *See* Compl. Exs. 1-4 ¶ 1 (emphasis added). In other words, from the moment the Parties entered into the BAAs, they were obligated to arbitrate all claims related to the respective employments. The Parties to the BAAs could therefore immediately demand arbitration at any point for covered claims. Indeed, the vesting of the right to arbitration is not contingent on the accrual of an underlying claim – the right to arbitrate (for any future claim) vested on the Parties entering into the BAAs. This makes sense, as "the right to insist on arbitration is not just a matter of where the claims may be heard but a question of vested, contractual rights, which may not be retroactively withdrawn absent clear congressional intent to that effect." *Weller v. HSBC Mortg. Servs., Inc.*, 971 F. Supp. 2d 1072, 1079 (D. Colo. 2013) (citing *Henderson v. Masco Framing Corp.*, No. 3:11-CV-00088-LRH, 2011 WL 3022535, at *4 (D. Nev. July 22, 2011); *Blackwell v. Bank of Am. Corp.*, No. 7:11-CV-02475-JMC, 2012 WL 1229675, at *4 (D.S.C. Apr. 12, 2012)).[8]

---

[8] Defendants attempt to distinguish *Weller* and *Henderson* on the grounds that they dealt with the validity of arbitration agreements upon retroactive application of subsequent legislation. *See* Dkt. # 34 at 12 n.1. But that is functionally the same issue here – the validity of the BAAs following a change in conditions and application of a federal regulation to vested arbitral rights.

ORDER – 11

The long and short of this discussion is simple – § 563.39 does not apply to the BAAs.  As such, the BAAs were not terminated or invalidated when the OTS closed WaMu.[9]

b.  <u>Whether Chase Can Enforce the BAAs</u>

Next, Defendants argue that Chase cannot enforce the BAAs because Chase is not the true successor in interest to WaMu as to the BAAs.  *See* Dkt. # 16 at 11-19.  Alternatively, Defendants argue that the language of the BAAs limits the arbitrable claims to only those arising solely out of the Defendants' employment relationship with WaMu, and not Defendants.  *See id.* at 16-18.  Finally, Defendants contend that Ms. Jones is not bound by the BAAs because of her break in service.  *See id.* at 19.  The Court disagrees and finds that Chase may enforce the BAAs.[10]

i.  *Whether Chase is the Successor in Interest to WaMu*

Nearly every court to have considered the question has ruled that Chase can enforce the arbitration agreements as successors in interest to WaMu.  *See Thompson v. JPMorgan Chase Bank et al.*, Case No. SACV 14-01181-JLS (JPRx) (C.D. Cal. Nov. 14, 2014) Dkt. # 22 at 9-10; *Hwang*, 2012 WL 3862338 at *2; *Abeyrama*, 2012 WL 2393063 at *2 (holding that Chase could enforce the agreement because it "acquired Washington Mutual and is therefore a successor-in-interest to Washington Mutual"); *Anderson*, 2010 WL 4827500 at *4; *Wright v. Wash. Mut. Home Loans, Inc.*, No. 08 C 4423, 2009 WL

---

[9] One final point merits mention.  Even assuming that § 563.39 applied to the BAAs, it is strongly questionable that the regulation would preempt the FAA.  Applying § 563.39 to void the BAAs here would contradict the FAA's mandate "to enforce agreements to arbitrate according to their terms."  *CompuCredit Corp. v. Greenwood*, 132 S. Ct. 665, 669 (2012) (citing *Byrd*, 470 U.S. at 221).  That cannot be the case "unless the FAA's mandate has been 'overridden by a contrary congressional command.'"  *Id.* (quoting Shearson, 482 U.S. at 226).  That principle is even clearer here, as "a regulation does not trump an otherwise applicable statute unless the regulation's enabling statute so provides."  *United States v. Maes,* 546 F.3d 1066, 1068 (9th Cir. 2008) (citing *Chevron U.S.A. Inc. v. Nat'l Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984)).  Defendants do not identify any provision in § 563.39's enabling statute to override the FAA's clear mandate to enforce the BAAs according to their terms.  Further, because Defendants raise this new argument on Reply, it is waived.  *Docusign, Inc.*, 468 F. Supp. 2d at 1307.

[10] The Court finds that Chase has standing to sue for the same reasons.

ORDER – 12

2704577, at *2 (N.D. Ill. Aug. 20, 2009); *but see O'Hanlon v. JPMorgan Chase Bank, N.A.,* No. CV1506640DDPPJWX, 2015 WL 5884844, at *7 (C.D. Cal. Oct. 7, 2015) (finding the arbitration agreement to be unconscionable and therefore denying arbitration).

In any event, Defendants' argument boils down to characterizing the BAAs as "employment agreements" that were not included in the P&A Agreement transferring WaMu's assets to the Chase.  *See* Dkt. # 16 at 14-15.

The P&A Agreement provides that Chase was not assuming certain liabilities. Specifically, Chase "expressly assume[d] . . . and agree[d] to pay, perform, and discharge, all of the liabilities of the Failed Bank . . . except as listed on the attached Schedule 2.1".  *See* Dkt. # 18 (Quiles Decl.) Ex. 4 at 31.  However, "[a]ll management, employment, change-in-control, severance, unfunded deferred compensation and individual consulting agreements or plans (i) between the Failed Bank and its employees" were expressly excluded as unassumed liabilities.  *See id.* at 58.  This language suggests that Chase did not expressly assume WaMu's liabilities on its employment contracts, but as explained, the Court is skeptical of this characterization of the BAAs.

Even beyond that, the plain language[11] of the P&A Agreement suggests that Chase acquired the *right* to demand arbitration of any employment related claims under the BAAs.  Under the P&A Agreement, Chase acquired "all right, title and interest of [the FDIC] in and to all of the assets (real, personal and mixed, wherever located and however acquired) . . . of [WaMu]."  *Id.* at 32.  Although Defendants suggest that the right to arbitrate is not an asset, they provide no real basis for that conclusion.  Instead, the right to arbitrate could be characterized as an asset as it may be acquired and has value.  *See Restoration Pres. Masonry, Inc. v. Grove Europe Ltd.,* 325 F.3d 54, 63 n.2 (1st Cir. 2003)

---

[11] The federal common law of contracts applies to interpreting the terms of the P&A Agreement. *See GECCMC 2005-C1 Plummer Street Office Ltd. P'ship v. JPMorgan Chase Bank, Nat'l Ass'n*, 671 F.3d 1027, 1032-33 (9th Cir. 2012).

ORDER – 13

(citing 1 G.M. Wilner, *Domke on Commercial Arbitration* § 10:00, at 1-2 & 3 n.5 (rev. ed. 2002)) ("A non-signatory may be bound by or acquire rights under an arbitration agreement under ordinary state-law principles of agency or contract"); *cf.* Note, *Jurisdiction in Bankruptcy Proceedings: A Test Case for Implied Repeal of the Federal Arbitration Act*, 117 Harv. L. Rev. 2296, 2317 n.95 (2004) (suggesting that although "the right to arbitrate is not property in the traditional sense; it is, however, a right that has value" and therefore falls within the bankruptcy estate).[12]

### ii.   *Whether the Underlying Claims are Covered by the BAAs*

The BAAs cover "[a]ny and all disputes which involve or relate in any way to my employment (or termination of employment) with Washington Mutual." *See* Compl. Exs. 1-4 ¶ 1.  They also provide that they "shall remain in full force and effect at all times during and subsequent to my employment with Washington Mutual, or any successor in interest to Washington Mutual." *Id.* Ex. 1 ¶ 18, Exs. 2-4 ¶ 21.

Defendants argue that the BAAs do not cover the claims that arise solely from employment with Chase. *See* Dkt. # 16 at 16.  They further argue that the BAAs do not include WaMu's successors in interest in their definition of "Washington Mutual" and fail to include disputes arising from WaMu and its successors in interest in the clause defining its scope. *See id.* at 16-17.

The rule is clear: "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25

---

[12] Alternatively, Chase could have acquired the right to arbitrate through other terms of the P&A Agreement.  The P&A Agreement provides that "[w]ith respect to agreements existing as of [WaMu's closing] which provide for the rendering of services by or to [WaMu]," Chase was to give the FDIC "written notice specifying whether it elects to assume or not to assume each such agreement." *See* Dkt. # 18 (Quiles Decl.) Ex. 4 at 39.  Chase "assumed agreements for which no notification is" given with 120 days. *See id.* at 39-40.  And for such agreements, the FDIC "agree[d] to assign, transfer, convey, and deliver to [Chase] all right, title and interest of the [FDIC], if any, in and to agreements [Chase] assume[d]" in this manner. *See id.* at 40. Defendants have not presented any evidence that Chase gave such notice.

ORDER – 14

(1983).  Indeed, arbitration clauses have a presumption of arbitrability that "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."  *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1284 (9th Cir. 2009) (quoting *Commc'ns Workers of Am.*, 475 U.S. at 650).  Indeed, without an express provision excluding the issue from arbitration, "only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail."  *Peters v. Amazon Servs. LLC*, 2 F. Supp. 3d 1165, 1172-73 (W.D. Wash. 2013) (quoting *Warrior & Gulf*, 363 U.S. at 584-85).  Defendants (as the party resisting arbitration) do not meet this burden.  *Green Tree Fin.*, 531 U.S. at 91-92.

But Defendants do not point to any express provision excluding successors in interest from coverage or present "forceful evidence" showing intent to exclude WaMu's successors in interest from arbitrating employment claims arising solely from employment with the successors.  To the contrary, the language of the BAAs suggests that the Parties intended for the BAAs to cover WaMu's successors.  "Washington Mutual" is defined to include "affiliates and subsidiaries," meaning that the Parties contemplated the BAAs to extend to entities organizationally related to WaMu.  *See* Compl. Exs. 1-4.  Furthermore, the BAAs unequivocally state that they "shall remain in full force and effect at all times *during and subsequent to my employment with Washington Mutual, or any successor in interest to Washington Mutual,*" suggesting that the BAAs could be enforced by WaMu's successors in interest.  *See id.* Ex. 1 ¶ 18, Exs. 2-4 ¶ 21 (emphasis added).  This is bolstered by the fact that all other Ninth Circuit courts have found that nearly identical BAAs cover claims arising solely out of employment with Chase, as opposed to only claims arising from employment with WaMu.  *See Thompson,* Case No. SACV 14-01181-JLS (JPRx), Dkt. # 22 at 9-10; *Abeyrama*, 2012 WL 2393063 at *6; *Hwang*, 2012 WL 3862338 at *2.

### iii. Whether Ms. Jones' Claims are Covered

ORDER – 15

Defendants also argue that Ms. Jones' break in service terminated any right for Chase to enforce the BAAs against her. *See* Dkt. # 16 at 19. Ms. Jones was not employed by WaMu when it was closed by the OTS and its assets transferred to Chase. *See* Dkt. # 22 (Jones Decl.) ¶ 2. Rather, she was employed by WaMu from 1999 to 2006 and was employed by Chase from July 2009 to November 2013. *Id.*

Ms. Jones' break in service did not invalidate her BAA. Although Defendants argue that the "consideration for the agreement . . . had long expired" by the time Ms. Jones was employed by Chase, they do not explain what they mean. *See* Dkt. # 16 at 19. The consideration – her employment with WaMu and the mutual agreement to arbitrate employment claims – did not "expire" as it had already been provided. Moreover, the BAA provides that it will "remain in full force and effect at all times during *and subsequent to my employment* with Washington Mutual, or any successor in interest to Washington Mutual." Compl. Ex. 1 at 15. Simply put, the BAAs did not terminate due to some failure of consideration when Ms. Jones left WaMu's employ – if that were the case, then the BAA would be invalid the moment any employee terminated their service. The plain language of the BAA belies that possibility.

c. Whether the BAAs Authorize Class or Collective Arbitration

Defendants also contend that if the BAAs require arbitration, then arbitration may proceed on a collective or class basis. *See* Dkt. # 16 at 19. They argue that the express terms of the BAAs do not expressly exclude collective or class arbitration and that such arbitration would not be inconsistent with the terms or purpose of the BAAs. *See id.* at 19-25. The Court disagrees.

The availability of class arbitration is a gateway question of arbitrability for the court to decide. *See Chesapeake Appalachia, LLC v. Scout Petroleum, LLC*, 809 F.3d 746, 748 (3d Cir. 2016)[13] (quoting *Opalinski v. Robert Half Int'l Inc.*, 761 F.3d 326, 329,

---

[13] The *Scout Petroleum* court also appeared to disagree with *Chesapeake Appalachia, LLC v. Burkett,* No. CIV.A. 3:13-3073, 2014 WL 5312829, at *1 (M.D. Pa. Oct. 17, 2014), which Defendants extensively rely on.

ORDER – 16

335-36 (3d Cir. 2014)); *Huffman v. Hilltop Cos., LLC*, 747 F.3d 391, 398 (6th Cir. 2014) (quoting *Reed Elsevier, Inc. ex rel. LexisNexis Div. v. Crockett*, 734 F.3d 594, 599 (6th Cir. 2013)).  "[C]lass-action arbitration changes the nature of arbitration to such a degree that it cannot be presumed the parties consented to it by simply agreeing to submit their disputes to an arbitrator."  *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 685 (2010).  Although the "failure to mention class arbitration in the arbitration clause itself does not necessarily equate with the 'silence' discussed in *Stolt–Nielsen*," there still must be some basis "to conclude that the parties intended to include class arbitration in their agreement."  *Parvateneni v. E*Trade Fin. Corp.*, 967 F. Supp. 2d 1298, 1303 (N.D. Cal. 2013) (quoting *Yahoo! Inc. v. Iversen*, 836 F. Supp. 2d 1007, 1011 (N.D. Cal. 2011)) (internal quotation marks omitted).

Defendants do not supply any basis for finding that the Parties intended to include collective or class arbitration in the BAAs.  Instead, they broadly read the BAAs' call to submit "[a]ny and all disputes which involve or relate in any way to my employment (or termination of my employment) with Washington Mutual" (Compl. Exs. 1-4 ¶ 1) to binding arbitration as the supposed basis for including class arbitration (Dkt. # 16 at 19-25) and the BAAs' failure to expressly exclude class arbitration (Dkt. # 16 at 23).

But the BAAs only contemplate bilateral arbitration of disputes between WaMu and individual employees; they do not authorize class or collective arbitration.  The agreements consistently refer to the Defendants in the singular, suggesting that each Defendant's BAA only applies to disputes between that Defendant and WaMu.  *See* Compl. Exs 1-4 ¶¶ 1 ("my employment"), 2 ("I understand . . . I am waiving any right I may have"), 7 ("Washington Mutual and I will"), 10 ("During the arbitration process, Washington Mutual and I may each make").  The BAAs make no reference to employee groups or other employees' claims or disputes, further suggesting that they did not intend to permit class arbitration.  *See Chico v. Hilton Worldwide, Inc.,* No. CV 14-5750-JFW SSX, 2014 WL 5088240, at *12 (C.D. Cal. Oct. 7, 2014); *cf. Reed Elsevier*, 734 F.3d at

ORDER – 17

599 (concluding the arbitration clause did not provide for class arbitration because "the clause nowhere mentions it" and that "the clause limits its scope to claims 'arising from or in connection with *this Order*,' as opposed to other customers' orders."). And the BAAs call for arbitrations to take place in the state the employee was last employed and pursuant to that state's laws (*see* Compl. Exs. 1-4 ¶¶ 5, 7), suggesting that collective arbitration was not contemplated (*cf. United Food & Commercial Workers, Local 21 v. MultiCare Health Sys.,* No. C10-1646RSL, 2011 WL 834141, at *2 (W.D. Wash. Mar. 3, 2011) (holding that different collective bargaining agreements did not contemplate consolidated arbitration because they provided for different rules)). Finally, merely because the BAAs do "not expressly exclude the possibility of classwide arbitration" is insufficient; they do "not include it either, which is what [they] must do in order for [the Court] to force" class arbitration. *See Reed Elsevier*, 734 F.3d at 600.

  d.  <u>Whether the Dispute is Moot</u>

  In their Motion to Dismiss, Defendants argue that the case is moot because they have withdrawn their arbitration demand and opted into the *Taylor* class action. *See* Dkt. # 17 at 15-16.

  "An action is moot 'if it has lost its character as a present, live controversy.'" *Forest Guardians v. Johanns*, 450 F.3d 455, 461 (9th Cir. 2006) (quoting *Am. Rivers v. Nat'l Marine Fisheries Serv.*, 126 F.3d 1118, 1123 (9th Cir. 1997)). "The party asserting mootness bears a 'heavy' burden; a case is not moot if any effective relief may be granted." *Karuk Tribe of Cal. v. U.S. Forest Serv.*, 681 F.3d 1006, 1017 (9th Cir. 2012) (quoting *Forest Guardians*, 450 F.3d at 461)).[14] Furthermore, "[c]ourts are understandably reluctant to declare a case moot based on the defendant's voluntary cessation of the challenged activity." *Am. Cargo Transp., Inc. v. United States*, 625 F.3d 1176, 1179 (9th Cir. 2010) (citing cases)

---

[14] In other words, Defendants have incorrectly reversed the burden of proving mootness. *See* Dkt. # 34 at 13.

ORDER – 18

The Action is not moot for two simple reasons.  First, Defendants have incorrectly reversed the burden of proving mootness – *they* bear the burden of showing that the matter has become moot, not Chase.  Second, Defendants' own actions show that the case remains live: they are still pursuing the same claims against Chase, albeit in a different forum.  The question of whether Defendants can be compelled into arbitration for their FLSA claims remains live regardless of whether they have withdrawn their initial arbitration demands and opted into another forum for pursuing those claims.  Indeed, even though *Defendants* may have withdrawn their demand for arbitration, there is strong reason to believe that *Chase* will continue to press for arbitration.  Defendants' withdrawal of their arbitration demands does not moot this action.  *Cf. Massa Constr. Inc. v. Empire State Carpenters Fringe Benefits Funds*, No. 12-CV-6405 JS AKT, 2013 WL 4780957, at \*5 (E.D.N.Y. Sept. 4, 2013) (holding that "Respondent's voluntary cessation of its demand for arbitration does not render the case moot"); *Post Tribune Publ'g, Inc. v. Am. Arbitration Ass'n, Inc.*, 767 F. Supp. 935, 941 (N.D. Ind. 1991).

> e.  Whether the Court has Personal Jurisdiction Over the Out of State Defendants

Finally, the Court must address whether it has personal jurisdiction over the out of state Defendants.  Those three Defendants live in either Florida or New York and last worked for Chase in those states.  *See* Dkt. # 19 (Navarette Decl.) ¶¶ 2, 5; Dkt. # 20 (Grattan Decl.) ¶¶ 2, 5; Dkt. # 21 (Reid Decl.) ¶¶ 2, 5.

"[W]here no federal statute governs personal jurisdiction, the court's jurisdictional analysis starts with the 'long-arm' statute of the state in which the court sits."  *T-Mobile USA, Inc. v. Huawei Device USA, Inc.*, 115 F. Supp. 3d 1184, 1200 (W.D. Wash. 2015) (quoting *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1123 (9th Cir. 2002)).  Though no party addresses this point, it appears that neither the FAA nor the FLSA provides for personal jurisdiction.  *See Johns v. Taramita*, 132 F. Supp. 2d 1021, 1027 (S.D. Fla. 2001) (holding that the FAA is silent as to personal jurisdiction); *Langlois v. Deja Vu, Inc.,* 984 F. Supp. 1327, 1333 (W.D. Wash. 1997)

ORDER – 19

(citing *Aviles v. Kunkle,* 978 F.2d 201, 203 (5th Cir. 1992); Fed. R. Civ. P. 4(k)(1)(A)) (holding that FLSA is silent as to personal jurisdiction). "Washington's long-arm statute (RCW 4.28.185) extends personal jurisdiction to the broadest reach that the Due Process Clause of the federal Constitution permits." *T-Mobile*, 115 F. Supp. 3d at 1200 (citing *Shute v. Carnival Cruise Lines*, 783 P.2d 78, 82 (Wash. 1989)).

Depending on the strength of a defendant's contacts with a state, "there are two forms that personal jurisdiction may take: general and specific." *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) (citing *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008)). Chase does not contend that the Court has general jurisdiction over the out of state Defendants, so the inquiry focuses on whether the Court has specific jurisdiction. The Ninth Circuit employs a three part test in assessing whether a defendant has sufficient contacts to be subject to specific jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Picot*, 780 F.3d at 1211 (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)). The plaintiff bears the burden of proving the first two prongs; if she does, the burden shifts to the defendant to present a compelling case for why the exercise of jurisdiction would be unreasonable. *See id.* at 1211-12 (citing *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011)). Because the claims here generally sound in contract, as opposed to tort, the Court applies a "purposeful availment" analysis, asking "whether a defendant has 'purposefully avail[ed] [himself] of

ORDER – 20

the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws'". *See id.* at 1212 (quoting *Schwarzenegger*, 374 F.3d at 802).

Chase points to only two contacts between the out of state Defendants and Washington. Specifically, those three Defendants were employed by WaMu, a company headquartered in Seattle, Washington (*see* Compl. ¶¶ 6-9) and later sought to initiate arbitration against Chase by submitting an arbitration demand to Seattle (*see* Dkt. # 10 (Linthorst Decl.) ¶ 4, Ex. 3.

These contacts are insufficient to sustain personal jurisdiction. Boiled down, the sole relationship between the out of state Defendants and Washington is their former relationship with WaMu. That link alone is not enough to form the basis of personal jurisdiction.[15] *See Walden v. Fiore*, 134 S. Ct. 1115, 1122-23 (2014) (citing *Rush v. Savchuk*, 444 U.S. 320, 332 (1980)) (holding that "a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction."). Moreover, the mere fact that Defendants mailed their arbitration demand to WaMu's Seattle address is of little consequence. *See Oklahoma Hous. Dev. Auth. v. Stroock & Stroock & Lavan, LLP,* No. CIV-06-235-C, 2006 WL 2494717, at *3 (W.D. Okla. Aug. 28, 2006) (citing cases); *Pytlik v. Prof'l Res., Ltd.*, 887 F.2d 1371, 1376 (10th Cir. 1989)); *see also Senne v. Kansas City Royals Baseball Corp.*, 105 F. Supp. 3d 981, 1030 (N.D. Cal. 2015) (finding that the Atlanta Braves had not purposefully availed themselves of the California forum, even when it presented contract, sent communications related to

---

[15] Chase's cited cases do not compel a different result. The connection between the employment relationship and Washington was much stronger in both *Failla v. FixtureOne Corp.*, 336 P.3d 1112, 1116-17 (Wash. 2014) and *Cofinco of Seattle, Ltd. v. Weiss*, 605 P.2d 794, 795 (Wash. Ct. App. 1980). Here, the out of state Defendants were merely employed by a company headquartered in Seattle – there is no evidence that they even spoke to an employee in Washington, much less received samples, were advanced funds, or only had contact from someone in Washington. The guarantors in *Freestone Capital Partners L.P. v. MKA Real Estate Opportunity Fund I, LLC*, 230 P.3d 625, 630-31 (Wash. Ct. App. 2010) had multiple contacts with the Washington based plaintiff, which "included regular correspondence by telephone, e-mail, and mail" as well as the understanding that the guarantors could be sued in Washington courts. In contrast, there is no evidence here of any contacts other than the single arbitration demand and there was no expectation that the Defendants could be sued in Washington – the BAAs actually compel the opposite result. *See* Compl. Exs. 2-4 ¶ 5.

ORDER – 21

employment, and knew offseason condition would be required of plaintiff in California); *Doe v. Geller*, 533 F. Supp. 2d 996, 1005-06 (N.D. Cal. 2008) (expressing significant doubt as to whether the "defendants' single act of sending the takedown notice to YouTube in California" could meet the first prong of the test for personal jurisdiction).

"To determine whether a claim arises out of forum-related activities, courts apply a 'but for' test." *Doe v. Unocal Corp.*, 248 F.3d 915, 924 (9th Cir. 2001) (citing *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995)). But Chase's claims would not have arise "but for" Defendants' sole contact with Washington – regardless of where the Defendants initially asserted their FLSA claims, Chase still could have brought its claims for compelling arbitration under the BAAs. *Fireman's Fund Ins. Co. v. Nat'l Bank of Cooperatives*, 103 F.3d 888 (9th Cir. 1996) does not compel a different result. There, the court found that the plaintiffs' declaratory relief action properly arose out of the defendant's California activities because the defendant had obtained an arbitration award through an arbitration conducted in California and sought to enforce that award against a California party. *See id.* at 894. No such connection exists here. Likewise, *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082 (9th Cir. 2000) is inapplicable. There, the claim did not arise solely out of a cease and desist letter that placed the plaintiff on notice of the competing claim, but rather a letter to the domain name registry which would have automatically prevented the California-based plaintiff from using its website had it not filed suit. *See id.* at 1089.

Because Chase has not met its burden in showing that specific jurisdiction exists over the out of state Defendants, the Court finds that it does not have personal jurisdiction over them. As such, Chase's claims against the out of state Defendants must be dismissed.

## V.   CONCLUSION

For the foregoing reasons, the Court **GRANTS in part and DENIES in part** Chase's Motion to Compel Arbitration and **GRANTS in part and DENIES in part** Defendants' Motion to Dismiss.  Dkt. # 9, 17.  Specifically, the Court **ORDERS**:

1. Chase's Motion to Compel Arbitration is **GRANTED** as to Ms. Jones in its entirety.  Ms. Jones must pursue her individual claims in arbitration on a non-class and non-collective basis in Washington State in accordance with the terms of the Binding Arbitration Agreement;

2. Chase's Motion to Compel Arbitration is **DENIED** as to Ms. Reid, Mr. Navarette, and Ms. Grattan;

3. Defendants' Motion to Dismiss is **GRANTED** insofar as the Court does not have personal jurisdiction over the out of State Defendants.  As such, Chase's claims against Ms. Reid, Mr. Navarrete, and Ms. Grattan are dismissed; and

4. Defendants Motion to Dismiss is **DENIED** on all other grounds.

DATED this 28th day of March, 2016.

The Honorable Richard A. Jones
United States District Court

ORDER – 23